**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ESAUL CARDENAS,           )
                                     )
        Petitioner,        )      3:04-cv-00720-PMP-WGC
                                     )
vs.                          )      **ORDER**
                                     )
WARDEN VARE, *et al.*,     )
                                     )
        Respondents.     )
_____/

      This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, by Esaul Cardenas, a prisoner represented by counsel. This matter comes before the Court on respondents' motion to dismiss the amended petition. (ECF No. 62). Also before the Court is respondents' motion to strike exhibits. (ECF No. 64).

**I. Procedural Background**

      On June 17, 2002, petitioner was charged with one count of sexual assault with a minor under fourteen years of age and five counts of lewdness with a minor under the age of fourteen, in a criminal complaint filed with the Justice Court in Las Vegas. (Exhibit 2).[1] The State amended the

---

[1] Exhibits referenced in this order are found in the Court's record at ECF Nos. 18, 58, 63, 70.

criminal complaint on June 28, 2002, adding five additional counts of lewdness with a minor under the age of fourteen, a single count of open or gross lewdness, and a single count of indecent exposure.  (Exhibit 5).  Pursuant to plea negotiations, a criminal information was filed on July 5, 2002, charging petitioner with two counts of lewdness with a child under the age of fourteen. (Exhibits 9, 10).

On July 7, 2002, petitioner unconditionally waived his right to a preliminary hearing. (Exhibit 10).  Petitioner's attorney, Jordan S. Savage, informed the court that the case had been resolved with a plea agreement.  (*Id.*).  Pursuant to a guilty plea agreement signed by petitioner, plea counsel Jordan Savage, and the State, the state district court accepted petitioner's plea of guilty to the two counts charged in the information on July 9, 2002.  (Exhibit 12).  The written plea agreement was filed on July 9, 2002.  (Exhibit 11).

At the scheduled sentencing hearing on September 11, 2012, plea counsel Jordan Savage informed the court that petitioner wished to withdraw his guilty plea.  (Exhibit 8, at p. 2; Exhibit 128, at pp. 3-4).  At the September 11, 2012 hearing, the state district court appointed conflict counsel, Gregory Denue, for the purpose of reviewing petitioner's proceedings to determine whether there was a basis for withdrawal of the guilty plea.  (Exhibit 8, at p. 2; Exhibit 105, at p. 3). Petitioner filed a motion, in *pro per*, on November 18, 2002, requesting that conflict counsel Gregory L. Denue be dismissed as his lawyer.  (Exhibit 20).  Also on November 18, 2002, petitioner filed a motion to proceed *pro se.*  (Exhibit 21).  Petitioner filed a third motion on November 18, 2002, to withdraw his guilty plea, alleging that he was "misled and coerced to plea," that he was not aware that the plea required life sentences, and that he was innocent of the charges.  (Exhibit 22). Petitioner filed other motions with the state district court, in *pro per*, concerning transcripts, tapes, and evidence.  (Exhibits 15, 17, & 18).

Conflict counsel Denue filed a written motion to withdraw the guilty plea on November 19, 2002.  (Exhibit 23).  The state opposed the motion, and petitioner replied through counsel.  (Exhibits

2

25, 26).  At a hearing on the motion to withdraw plea, the state district court summarily denied the motion.  (Exhibit 107).  No evidentiary hearing was held, and attorney Denue did not permit petitioner to speak for himself at that hearing.  (*Id.,* at 8).  The court then addressed petitioner's motion to dismiss conflict counsel Gregory Denue after it had denied the motion to withdraw the plea.  (*Id.*).  Petitioner then withdrew his request to have conflict counsel Gregory Denue removed from his case.  (*Id.*).  The Court ordered that Denue remain as petitioner's counsel, and continued the case for sentencing.  (*Id.*).

On February 19, 2003, petitioner filed a *pro per* notice of appeal.  (Exhibit 29).  On March 11, 2003, petitioner submitted a motion to the Nevada Supreme Court asking for an interlocutory appeal.  (Exhibits 33 & 34).  The Nevada Supreme Court denied the request in an order filed April 8, 2003, noting that petitioner had not been sentenced and that a judgment of conviction had not been entered.  (Exhibit 37).

Petitioner then filed another set of *pro per* pleadings with the state district court.  This included an April 21, 2003 motion to dismiss conflict counsel Gregory Denue as his counsel (Exhibit 40), an April 22, 2003 motion to proceed in *pro se* (Exhibit 41), and a May 13, 2003 motion to withdraw his plea (Exhibit 49).

The state district court held a hearing on May 5, 2003, at which the court conducted a canvass of petitioner pursuant to *Faretta v. California*, 422 U.S. 806 (1975).  (Exhibit 108).  The Court granted petitioner's motion for withdrawal of counsel and permitted petitioner to proceed in *pro per*, while appointing two attorneys to act as stand-by counsel, Francis Kocka and Jennifer Bolton. (Exhibit 108).  At a hearing on June 10, 2003, the state district court denied petitioner's *pro per* motion for withdrawal of his guilty plea and his other motions.  (Exhibit 54).

The state district court sentenced petitioner at a hearing on June 12, 2003.  (Exhibit 55).  At the sentencing hearing, one of petitioner's stand-by attorneys, Frank Kocka, was present, however, conflict counsel Gregory Denue, was not present.  (Exhibit 55, at p. 9).  The state district court

1   sentenced petitioner to two concurrent life sentences with eligibility for parole after ten years on the

2   lewdness charges, as well as lifetime supervision.  (Exhibit 55; Exhibit 64).  After the state district

3   court sentenced petitioner, petitioner indicated his desire to appeal the denial of his motion to

4   withdraw his guilty plea.  (Exhibit 55, at pp. 8-9).  Petitioner asked to withdraw conflict counsel

5   Gregory Denue and asked the court to have stand-by attorney Frank Kocka prepare petitioner's

6   appeal.  (*Id.*).  Stand-by attorney Frank Kocka told the court that he came into the case late, thought

7   that he was "appointed as standby just for the purpose of sentencing," and stated that "I don't know

8   anything about the case."  (*Id.*, at p. 9).  On the record and over petitioner's objection, the state

9   district court appointed the attorney previously appointed as conflict counsel, Gregory Denue, to

10  handle petitioner's direct appeal, noting that Denue was already familiar with the case and could get

11  it done faster than attorney Kocka.  (*Id.*).  However, the state district court did not issue a written

12  order notifying conflict counsel Gregory Denue of the appointment for handling petitioner's direct

13  appeal at that time.

14         Conflict counsel Gregory Denue did not file a notice of appeal.  However, petitioner, acting

15  in *pro per,* filed two separate timely notices of appeal, one on June 16, 2003 and one on June 27,

16  2003.  (Exhibits 57 & 61).  As a result, the Nevada Supreme Court initially designated petitioner's

17  appeal as a *proper person* appeal.  (Exhibit 59).  After reviewing the record, the Court re-designated

18  the appeal as one in which petition was represented by counsel and sent a notice to Gregory Denue,

19  dated June 27, 2003, instructing him to file a docketing statement within 15 days.  (Exhibit 62A).

20  This notice was not sent to petitioner, and this may explain why petitioner, in a July 27, 2003 letter

21  to the Nevada Supreme Court, continued to believe that he was representing himself on appeal.  (*See*

22  Exhibit 65).

23         Petitioner filed a motion to withdraw counsel on August 12, 2003, in the state district court,

24  seeking "permission to withdraw his present counsel of record" and that counsel be ordered to

25  provide him copies of his file.  (Exhibit 67).  The state district court held a hearing on the motion on

26

4

1   August 25, 2003, at which petitioner was not present.  (Exhibit 112).  Attorney Jennifer Bolton, who

2   was originally appointed as stand-by counsel along with Frank Kocka, made an appearance at the

3   hearing.  (Exhibit 112, at pp. 2-3).  In the transcript of the hearing, State District Judge Bonaventure

4   denied petitioner's motion to dismiss counsel and proceed proper per, and also denied his motion for

5   transcripts.  (*Id.*, at p. 3).  The Clerk directed the State to prepare the order.  (*Id.*).  The written order,

6   signed by the judge and filed August 29, 2003, granted the motion to withdraw stand-by counsel

7   Jennifer Bolton, and denied petitioner's motion for transcripts.  (Exhibit 70).

8        In a motion dated July 13, 2003, petitioner asked the Nevada Supreme Court to dismiss

9   Denue as his appellate counsel and appoint a new attorney.  (Exhibit 77).  Although the Nevada

10  Supreme Court received the motion on July 21, 2003, no immediate action was taken.  (*Id.*).

11  Petitioner's motion was finally filed by the Nevada Supreme Court on December 30, 2003.  (*Id.*).

12       Petitioner filed a *pro per* state habeas petition in the state district court on November 14,

13  2003, along with a memorandum of points and authorities, raising three grounds for relief, which

14  alleged that the district court failed to appoint counsel, or qualified counsel, on his direct appeal.

15  (Exhibit 72 & 73).

16       On December 30, 2003, the Nevada Supreme Court filed an order denying petitioner's

17  motion to dismiss attorney Denue as his appellate counsel.  (Exhibit 78).  In that order, the Nevada

18  Supreme Court noted that attorney Denue failed to submit a docketing statement or an opening brief,

19  which had been previously ordered by the Court.  (*Id.*).  The Court ordered petitioner to submit his

20  docketing statement, opening brief, and appendix through conflict counsel Gregory Denue within 20

21  days.  (*Id.*).

22       Weeks after the deadline set by the Nevada Supreme Court's December 30, 2003 order,

23  attorney Gregory Denue sent the Nevada Supreme Court a letter, dated February 4, 2004, in which he

24  claimed that he had never been appointed as petitioner's appellate counsel.  (Exhibit 86).  The letter

25  was received by the Nevada Supreme Court on February 6, 2004, and filed into the Court's docket on

26

5

1    February 25, 2004.  (*Id.*).  In an order filed February 25, 2004, the Nevada Supreme Court, after

2    studying the district court record, concluded that Denue was in fact petitioner's attorney of record for

3    the direct appeal.  (Exhibit 85).  The Nevada Supreme Court ordered attorney Denue to file a

4    docketing statement within 20 days, and to file an opening brief and appendix within 60 days.  (*Id.*).

5         Denue attempted to file a fast track statement and appendix on March 8, 2004, pursuant to

6    NRAP 3C.  (*See* Exhibit 89).  In an order filed March 19, 2004, the Nevada Supreme Court noted

7    that the case was not a fast track appeal because petitioner was sentenced to life in prison.  (Exhibit

8    89).  The Nevada Supreme Court struck Denue's fast track statement from the record, ordered Denue

9    to file a docketing statement and request for transcripts within 15 days, and to file an opening brief

10   and appendix within 50 days.  (*Id.*).  The order cautioned Denue that he could be sanctioned for

11   failure to timely comply with the order.  (*Id.*).

12        Attorney Denue filed a docketing statement on April 5, 2004, and filed a transcript request on

13   April 1, 2004.  (Exhibits 92 & 91).  He did not, however, filed an opening brief and appendix as

14   directed.  By order filed June 16, 2004, the Nevada Supreme Court entered an order noting that

15   Denue failed to file an opening brief and appendix, and granted him 10 days to file the same, while

16   cautioning him that failure to comply with the order could result in sanctions.  (Exhibit 94).

17        On July 8, 2004, Denue submitted an untimely opening brief and appendix, along with a

18   motion for late filing.  (Exhibits 97 & 95).  Denue's opening brief raised one claim for relief:

19   "Whether the district court abused its discretion when it denied Cardenas's motion to withdraw his

20   guilty plea?"  (Exhibit 97, at p. 1).  By order filed August 30, 2004, the Nevada Supreme Court

21   granted Denue's motion for late filing, and filed the opening brief on August 30, 2004.  (Exhibit 96).

22   The Nevada Supreme Court's order noted that Denue had not provided any good cause for the late

23   filing of the opening brief, but the Court nevertheless granted the motion for late filing in the interest

24   of judicial economy.  (*Id.*).

25

26

6

1       The State filed an answering brief on August 30, 2004.  (Exhibit 98).  Denue did not file a

2  reply brief on petitioner's behalf.  The Nevada Supreme Court declined to hold oral argument on the

3  appeal.  (Exhibit 99).

4       In the interim, petitioner and the State commenced litigating his state habeas petition in the

5  state district court.  (Exhibits 75, 76).  The state district court denied the petition, with Findings of

6  Fact, Conclusions of Law, and Order filed on June 30, 2004.  (Exhibit 83).  The order resolved the

7  ineffective assistance of counsel claim by concluding that petitioner had dismissed his attorney

8  following his conviction and elected to represent himself.  (*Id.*).  Petitioner filed a timely *pro per*

9  notice of appeal.  (Exhibit 80).  After reviewing petitioner's state habeas petition, and recognizing

10  that his direct appeal was still pending, the Nevada Supreme Court affirmed the denial of habeas

11  relief, by order filed November 17, 2004.  (Exhibit 100).  The Nevada Supreme Court's order noted

12  that the state habeas petition was without merit because the state district court had appointed counsel

13  to represent him on direct appeal, and the Court then specifically stated that the denial of the habeas

14  petition was without prejudice, as follows:

15           Accordingly, we ORDER the judgment of the district court
            AFFIRMED without prejudice to Cardenas to file a post-conviction
16           petition for a writ of habeas corpus at the conclusion of his direct
            appeal. [Footnote 2: We note that any subsequent petition for a writ of
17           habeas corpus must comply with the statutory requirements for the
            filing of such writ.  See NRS 34.720-738.]
18

19  (Exhibit 100, at p. 2).  On January 25, 2005, the Nevada Supreme Court entered an order affirming

20  petitioner's conviction on direct appeal.  (Exhibit 102).  The Nevada Supreme Court ruled that

21  "Cardenas did not demonstrate a fair and substantial reason to withdraw his guilty plea."  (Exhibit

22  102, at p. 2).  Remittitur issued on February 22, 2005.  (Exhibit 104).

23       On December 13, 2004, this Court received petitioner's *pro se* federal habeas petition.  Upon

24  payment of the filing fee, the petition was filed by the Clerk of Court on February 3, 2005.  (ECF No.

25  9).  Pursuant to the "mailbox rule," federal courts deem the filing date of a document as the date that

26  it was given to prison officials for mailing.  *Houston v. Lack*, 487 U.S. 266, 270 (1988).  At

1   numbered item 5, page 1 of the federal petition, petitioner states that he mailed or handed the petition

2   to a correctional officer for mailing to this Court on December 9, 2004.  (ECF No. 9).  The Court

3   therefore deems the date of filing of the original federal habeas petition as December 9, 2004.

4           This Court construed the federal petition as containing three grounds for relief:

5   (1) ineffective assistance of plea counsel; (2) denial of the right to counsel on direct appeal based on

6   the state district court's alleged failure to appoint counsel; and (3) an abuse of discretion by the state

7   district court in denying petitioner's motion to withdraw his guilty plea.  (ECF No. 9; ECF No. 28).

8   Respondents filed an answer to the federal petition on July 6, 2005, arguing that the Nevada

9   Supreme Court had reasonably denied all three of petitioner's claims on the merits.  (ECF No. 17).

10  In the answer, the State incorrectly represented that "it appears Cardenas did not file a direct appeal"

11  from this conviction after entering a guilty plea.  (ECF No. 17, at p. 2).  The State also inconsistently

12  represented that petitioner's ineffective assistance of appellate counsel claim was without merit

13  because "Cardenas moved to dismiss his counsel and proceed pro se."  (*Id.*, at p. 7).

14          On July 15, 2005, this Court entered a minute order granting petitioner until August 31, 2005,

15  to file a reply to the answer.  (ECF No. 21).  Petitioner did not file a reply within the allotted time

16  given.

17          On April 9, 2007, petitioner, who proceeded *pro se* at that time, filed a letter with the Court,

18  which the Clerk entitled as a Motion to Dismiss.  (ECF No. 23).  In the letter, petitioner asked this

19  Court to dismiss his case without prejudice.  (*Id.*).  By order filed October 25, 2007, this Court

20  construed petitioner's April 9, 2007 filing as a motion for a stay and abeyance under *Rhines v.*

21  *Weber*, 544 U.S. 269 (2005), and denied the motion.  (ECF No. 25).  The Court also granted

22  petitioner another opportunity to file a reply to the answer – petitioner's reply was due on or before

23  November 24, 2007.  (*Id.*).  Petitioner filed a reply, labeled "traverse" on November 21, 2007, which

24  the Court construed as a reply.  (ECF No. 26).  Respondents filed a response to the traverse on

25  November 29, 2007.  (ECF No. 27).

26

8

1        By order filed March 11, 2008, this Court denied all three grounds of the petition on the

2   merits, and denied petitioner a certificate of appealability.  (ECF No. 28).  Judgment was entered on

3   the same date.  (ECF No. 29).  Petitioner appealed.  (ECF No. 30).

4   **II.  Recent Procedural History**

5        On March 31, 2009, the United States Court of Appeals for the Ninth Circuit entered an

6   order, stating: "The request for a certificate of appealability is granted with respect to the following

7   issue: whether appellant's counsel on direct appeal was ineffective."  (ECF No. 38, at p. 1).  In the

8   same order, the Court of Appeals appointed counsel for petitioner and directed this Court to locate

9   appointed counsel and inform the Clerk for the Court of Appeals.  (*Id.*).  By order filed April 9,

10  2009, this Court entered an order appointing the Federal Public Defender as petitioner's counsel on

11  appeal.  (ECF No. 39).  On July 12, 2011, the Court of Appeals entered an unpublished

12  memorandum opinion vacating and remanding the case to this Court.  (ECF No. 46).  The Court of

13  Appeals held that: "Given the ambiguities in Cardenas's pro se pleadings, the misstatements in the

14  Warden's filings, and the status of the record before it, we conclude that it would have been more

15  appropriate for the district court to have granted Cardenas leave to amend and clarify his claims."

16  (ECF No. 46, at p. 6) (citation omitted).  The Court of Appeals vacated the judgment of this Court

17  and remanded with instructions to allow Cardenas to amend his petition.  (*Id.*).  The Court of

18  Appeals specifically noted that:

19              This will permit the Warden to file an amended responsive pleading,
               and the district court will then be in a position to examine, as it deems
20             necessary, matters including: (1) the exhaustion of state remedies and
               whether any state remedies remain available, (2) procedural default,
21             (3) the need for an evidentiary hearing or further development of the
               record, (4) the proper standard of review, and (5) the merits of
22             Cardenas' claim.

23  (ECF No. 46, at p. 6, n.3).

24

25

26

By order filed August 24, 2011, this Court ordered petitioner, now represented by counsel, to file an amended petition and respondents to file a responsive pleading to the amended petition, addressing matters specified in footnote 3 of the Court of Appeals' opinion.  (ECF No. 49).

On February 3, 2012, by way of counsel, petitioner filed an amended petition.  (ECF No. 57). The first amended petition contains the following grounds:

> Ground One: Cardenas entered a plea because of the ineffective assistance of counsel.  As such, Cardenas is incarcerated in violation of his right to the effective assistance of counsel under the Sixth and Fourteenth Amendment to the United States Constitution.

> Ground Two: Cardenas entered a plea that was not knowing, voluntary, or intelligent in violation of his right to due process of the law under the Sixth and Fourteenth Amendments to the United States Constitution.

> Ground Three: Cardenas received ineffective assistance from his appointed attorney on direct appeal.  As such, Cardenas is incarcerated in violation of his right to due process and the effective assistance of counsel under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

(ECF No. 57).  With the amended petition, petitioner filed Supplemental Exhibits 105-126.  (ECF No. 58).  On April 2, 2012, respondents filed a motion to dismiss the amended petition.  (ECF No. 62).  Respondents also filed Supplemental Exhibits 127-131.  (ECF No. 63).  Petitioner filed an opposition to the motion to dismiss.  (ECF No. 69).  With the opposition, petitioner filed supplemental Exhibits 132-143.  (ECF No. 70).  Respondents filed a reply.  (ECF No. 75).

Respondents have also filed a motion to strike Exhibits 115 through 122, 125, and 126, which were filed with the amended petition.  (ECF No. 64).  Petitioner has filed an opposition to the motion.  (ECF No. 68).  Respondents filed a reply.  (ECF No. 76).

**III. Discussion**

**A. Doctrine of Law of the Case**

Respondents argue that Grounds 1 and 2 of the first amended petition are barred by the doctrine of law of the case, because this Court denied similar claims from the original petition on

10

1   their merits.  Respondents argue that the Ninth Circuit granted a certificate of appealability only as to

2   the issue of whether appellant's counsel on direct appeal was ineffective.  Ground 2 of the original

3   petition alleged that appellant's counsel on direct appeal was ineffective.  Respondents argue that the

4   Ninth Circuit declined to issue a certificate of appealability addressing the denial of the other two

5   grounds of the original petition, "impliedly affirming this Court's denial of relief on the merits."

6   (ECF No. 62, at p. 7, lines 22-25).  Respondents argue that because only Ground 3 of the first

7   amended petition alleges the ineffective assistance of counsel on direct appeal, the other two grounds

8   in the first amended petition are barred by the doctrine of the law of the case.

9         This Court rejects respondents' argument that this case is limited to the one issue on which

10   the Ninth Circuit granted a certificate of appealability.  The Ninth Circuit's order stated: "Given the

11   ambiguities in Cardenas's pro se pleadings, the misstatements in the Warden's filings, and the status

12   of the record before it, we conclude that it would have been more appropriate for the district court to

13   have granted Cardenas leave to amend and clarify his claims."  (ECF No. 46, at p. 6) (citation

14   omitted).  The Ninth Circuit's order further states: "We vacate and remand with instructions to allow

15   Cardenas to amend his petition."  (*Id.*).  It is plain that the Ninth Circuit did not implicitly, or

16   otherwise, affirm this any part of this Court's March 11, 2008 order denying relief on all three

17   grounds of the original petition.  Moreover, the Ninth Circuit's order did not place any limitations on

18   the claims that petitioner could raise in the amended petition.

19         **B.  AEDPA Statute of Limitations, Relation-Back, and Equitable Tolling**

20               **1.  Statute of Limitations Defense Not Permitted in the Instant Case**

21         Respondents assert that Grounds 1, 2, and 3 the amended petition are untimely because the

22   claims do not relate back to the original petition.  Petitioner argues in the opposition that such an

23   argument is not permitted under the Ninth Circuit's memorandum opinion reversing and remanding

24   this case.  (ECF No. 69, at pp. 6-8).  This Court agrees.  In remanding the case to allow petitioner to

25

26

1  file an amended petition, the Ninth Circuit's memorandum opinion also gave the State an

2  opportunity to file an amended responsive pleading, with the Circuit specifically ruling that:

> This will permit the Warden to file an amended responsive pleading,
> and the district court will then be in a position to examine, as it deems
> necessary, matters including: (1) the exhaustion of state remedies and
> whether any state remedies remain available; (2) procedural default;
> (3) the need for an evidentiary hearing or further development of the
> record; (4) the proper standard of review, and (5) the merits of
> Cardenas' clam.  We would then be in a position to review any issues
> with the record thus clarified.

(ECF No. 46, at p. 6, n.3).  Notably, the Ninth Circuit did not list a statute of limitations defense

among those issues that should be raised and considered by this Court in its review of the amended

petition.  The omission of a statute of limitations defense is logical in light of the Circuit's order of

reversal and remand.  The Circuit's reasoning was that this Court erred in not granting petitioner the

opportunity to amend his petition in light of "the ambiguities in Cardenas's pro se pleadings, the

misstatements in the Warden's filings, and the status of the record before it [the Court]."  (*Id.*, at p.

6).  To wit, if this Court had allowed petitioner the opportunity to amend his petition within a

reasonable time of the State's answer, then there likely would have been no timeliness issue with his

amended petition.

## 2.  AEDPA Statute of Limitations and Relation Back

Assuming, for the sake of argument, that the Ninth Circuit's order of reversal and remand

allowed for respondents to make a procedural defense of statute of limitations, this Court finds that

the allegations made in the amended petition relate back to the original petition, and furthermore,

petitioner would be entitled to equitable tolling based on this Court's earlier error.

The Antiterrorism and Effective Death Penalty Act (AEDPA) amended the statutes

controlling federal habeas corpus practice to include a one-year statute of limitations on the filing of

federal habeas corpus petitions.  With respect to the statute of limitations, the habeas corpus statute

provides:

12

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

28 U.S.C. § 2244(d).

Under Federal Rule of Civil Procedure 15, an amended pleading "relates back" to the original pleading only if the acts described in the amended pleading are set forth in the original pleading. Fed. R. Civ. P. 15(c)(2).  An amended habeas petition only relates back if the amended claims are tied to the "same core of operative facts" as alleged in the original petition.  *Mayle v. Felix*, 545 U.S. 644, 664 (2005).  In *Mayle*, the petitioner originally raised only a Confrontation Clause claim in his habeas petition, based on the admission of video-taped prosecution witness testimony.  545 U.S. at 648-49.  After the one-year AEDPA statute of limitations had passed, petitioner then sought to amend his habeas petition to allege a Fifth Amendment claim based on coercive police tactics used to obtain damaging statements from him.  *Id.*  The factual basis for each claim was distinct. Petitioner then argued that his amended claim related back to the date of his original habeas petition

13

1  because the claim arose out of the same trial, conviction or sentence. *Id.* at 659-661. In rejecting

2  petitioner's argument the Supreme Court held that if "claims asserted after the one-year period could

3  be revived simply because they relate to the same trial, conviction, or sentence as a timely filed

4  claim, AEDPA's limitation period would have slim significance." *Id.* at 662.

5          There is no argument among the parties that the AEDPA statute of limitations expired in this

6  case on April 25, 2006. Petitioner's original *pro se* petition was filed on December 9, 2004. (ECF

7  No. 9, at p. 1). Following remand from the Ninth Circuit, petitioner filed his amended petition on

8  February 3, 2012. (ECF No. 57). Petitioner's original *pro se* petition consists of 21 hand and type-

9  written pages, consisting of part of this Court's standard habeas form, a type-written statement

10  outlining three grounds for relief, and an affidavit executed by petitioner. (ECF No. 9). It also

11  includes 88 pages of attachments, consisting of pleadings and orders filed in the state courts. (*Id.*).

12  All three grounds in the original petition are similar to the grounds raised in the amended petition

13  filed by petitioner's counsel. Ground One of both petitions concerns the ineffectiveness of

14  petitioner's plea counsel. (ECF Nos. 9 & 57). Ground 2 of the original petition and Ground 3 of the

15  amended petition both concern petitioner's appellate counsel, or lack of one. (*Id.*). Ground 3 of the

16  original petition and Ground 2 of the amended petition both allege that petitioner did not enter his

17  plea knowingly, intelligently, and voluntarily. (*Id.*). This Court has reviewed the arguments of

18  respondents and petitioner regarding timeliness and relation-back. This Court determines that all

19  grounds of the amended petition (Grounds 1, 2, and 3) relate back to the original petition.

20                    **3. Equitable Tolling**

21          Further, even assuming a scenario in which the grounds of the amended petition did not relate

22  back to the original petition, and the amended petition was deemed untimely, petitioner would be

23  entitled to equitable tolling, given the unique circumstances of this case. The United States Supreme

24  Court has held that the AEDPA's statute of limitations, at 28 U.S.C. "§ 2244(d) is subject to

25  equitable tolling in appropriate cases." *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010). "The

26

14

1   AEDPA statute of limitations defense . . . is not jurisdictional" and "it does not set forth an inflexible

2   rule requiring dismissal whenever the clock has run." *Holland,* 130 S.Ct. at 2560 (internal

3   quotations and citations omitted).  "[A] non-jurisdictional federal statue of limitations is normally

4   subject to a 'rebuttable presumption' in *favor* 'of equitable tolling." *Id.* (emphasis in original)

5   (quoting *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95-96 (1990)).  "In the case of the

6   AEDPA, the presumption's strength is reinforced by the fact that equitable principles have

7   traditionally governed the substantive law of habeas corpus. *Holland*, 130 S.Ct. at 2560 (citing

8   *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (internal quotations omitted).

9          The Supreme Court reiterated that "a petitioner is entitled to equitable tolling if he shows:

10   "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

11   stood in his way' and prevented timely filing." *Holland*, 130 S.Ct. at 2562 (quoting *Pace v.

12   DiGuglielmo*, 544 U.S. 408, 418 (2005)).  The Court made clear that the "exercise of a court's equity

13   powers . . . . must be made on a case-by-case basis," while emphasizing "the need for flexibility" and

14   "avoiding [the application of] mechanical rules." *Holland*, 130 S.Ct. at 2563 (internal quotations

15   and citations omitted).  In making a determination on equitable tolling, courts must "exercise

16   judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often

17   hard to predict in advance, could warrant special treatment in an appropriate case." *Holland*, 130

18   S.Ct. at 2563.

19          In the instant case, even if it was found that the amended petition did not relate back and is

20   untimely, petitioner would be entitled to equitable tolling.  Pursuant to the Ninth Circuit's

21   memorandum opinion, this Court erred in failing to direct petitioner to file an amended petition,

22   stating: "Given the ambiguities in Cardenas' pro se pleadings, the misstatements in the Warden's

23   filings, and the status of the record before it, we conclude that it would have been a more appropriate

24   course for the district court to have granted Cardenas leave to amend and clarify his claims."  (ECF

25   No. 46, at p. 6).  Had this Court directed petitioner to file an amended petition earlier, it could have

26

15

1    been filed within the statute of limitations.  A court's erroneous ruling can entitle a petitioner to

2    equitable tolling.  *Corjasso v. Ayers*, 278 F.3d 874, 878 (9th Cir. 2002) (finding that district court's

3    errors, including erroneous and hypertechnical rejection of *pro se* prisoner's petition and loss of his

4    original petition constituted "exceptional circumstances," justifying equitable tolling and excusing

5    the late filing of petition); *see Smith v. Ratelle*, 323 F.3d 813 (9th Cir. 2003) (finding petitioner

6    entitled to equitable tolling when federal district court dismissed second pro se § 2254 petition as

7    mixed without affording petitioner an opportunity to delete unexhausted claims or request stay-and-

8    abeyance procedure to return to state court to exhaust claims and limitations period expired after the

9    district court dismissed second petition); *see also Jefferson v. Budge*, 419 F.3d 1013 (9th Cir. 2005)

10   (ruling petitioner was entitled to equitable tolling when the federal district court dismissed his mixed

11   § 2254 petition without first giving him the warnings required by *Rose v. Lundy*, 455 U.S. 509

12   (1982), because AEDPA limitations period had expired before district court dismissed his petition,

13   and he returned to federal court within a reasonable time after exhausting his claims).  In the instant

14   case, petitioner has shown that he has been pursuing his rights diligently.  Further, he has shown that

15   an extraordinary circumstance, this Court's failure to direct him to amend his petition, as noted by

16   the Ninth Circuit, prevented timely filing of an amended petition.  *See Holland*, 130 S.Ct. at 2562.

17   In summary, the Court denies respondents' arguments that the amended petition is untimely, and

18   even if it were deemed to be untimely, petitioner is entitled to equitable tolling.

19           **C. Second or Successive Petition Argument**

20           Respondents argue that Grounds 1 and 2 of the amended petition should be treated as second

21   or successive claims and dismiss them for lack of subject matter jurisdiction.

22           The United States Supreme Court and the Ninth Circuit have held that the AEDPA

23   restrictions on filing second or successive petitions evolved from the "abuse of the writ" doctrine

24   developed in pre-AEDPA cases.  *Felker v. Turpin*, 518 U.S. 651, 664 (1996); *Hill v. State of Alaska*,

25   297 F.3d 895, 997-98 (9th Cir. 2002).  "'The doctrine of abuse of the writ defines circumstances in

26

16

1   which federal courts decline to entertain a claim presented for the first time in a second or

2   subsequent petition for writ of habeas corpus.'" *Barapind v. Reno*, 225 F.3d 1100, 1110 (9th Cir.

3   2000) (quoting *McCleskey v. Zant*, 499 U.S. 467, 470 (1991)).  The doctrine "serves as a substitute

4   for res judicata" because "res judicata, strictly speaking, does not attach to the denial of a first habeas

5   petition." *Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530, 538 (9th Cir. 1998 (en banc),

6   *overruled in part by Woodford v. Garceau*, 538 U.S. 202 (2003).  The AEDPA codified the "abuse

7   of the writ" doctrine and "created a 'gatekeeping' mechanism restricting the filing of second or

8   successive habeas applications in district court." *Barapind v. Reno*, 225 F.3d at 1110; 28 U.S.C. §

9   2244 *et seq*.  Where a petition has been dismissed with prejudice, the dismissal constitutes a

10  disposition on the merits and renders a subsequent petition second or successive for purposes of 28

11  U.S.C. § 2244(b).  *McNabb v. Yates*, 576 F.3d 1028, 1029-30 (9th Cir. 2009).  Ordinarily, a petitioner

12  must obtain an order from the court of appeals authorizing a second or successive petition before

13  filing it in the district court.  *See* 28 U.S.C. § 2244(b)(3)(A); *Magwood v. Patterson*, 130 S.Ct. 2788,

14  2796 (2010); *Thompson v. Calderon*, 151 F.3d 918, 920 (9th Cir. 1998) (en banc); *see also Woods v.

15  Carey*, 525 F.3d 886, 888 (9th Cir. 2008).

16          Respondents cite to *Scott v. Baldwin*, 225 F.3d 1020, 1023, n.7 (9th Cir. 2000), in which the

17  court noted that where petitioner sought remand to amend his petition by adding new unexhausted

18  claims for relief, the "petitioner's remedy is not to remand this case to the district court and amend

19  his present federal petition, but to seek permission to file a second or successive federal habeas

20  petition, after exhausting his remedies in state court."  (ECF No. 62, at p. 15).  Respondents argue

21  that Grounds 1 and 2 of the amended petition should be treated as a second or successive petition,

22  depriving this Court of subject matter jurisdiction.  (*Id.*).

23          This Court rejects respondents' contention that any part of the amended petition in the instant

24  case is second or successive and is subject to dismissal under 28 U.S.C. § 2244(b).  Respondents'

25  citation to *Scott v. Baldwin*, 225 F.3d. 1020, 1023, n.7 (9th Cir. 2000), is misplaced.  In *Scott v.

26

17

*Balwin*, the petitioner's motion to amend his petition was denied by the Circuit Court, in the same

opinion in which it affirmed the denial of the petition on the merits. *Id.* The court remarked that a

second petition was the prisoner's only remedy. *Id.* By contrast, in the instant case, the Ninth

Circuit did the opposite. It vacated this Court's order denying the petition on the merits, and

remanded the case back to this Court for the express purpose of allowing petitioner to file an

amended petition. (ECF No. 46, at p. 6). The Ninth Circuit Court of Appeals ruled in its

memorandum opinion of July 12, 2011, regarding the instant case:

> Given the ambiguities in Cardenas's pro se pleadings, the
> misstatements in the Warden's filings, and the status of the record
> before it, we conclude that it would have been a more appropriate
> course for the district court to have granted Cardenas leave to amend
> and clarify his claims. *See Jarvis v. Nelson*, 440 F.2d 13, 14 (9th Cir.
> 1971) (per curium) ("[A] petition for habeas corpus should not be
> dismissed without leave to amend unless it appears that no tenable
> claim for relief can be pleaded were such leave granted." We vacate
> and remand with instructions to allow Cardenas to amend his petition.
> (Footnote 3). *See Miranda v. Bennett*, 322 F.3d 171, 175 (2d Cir.
> 2003) (noting that appellate courts may remand to the district court for
> further proceedings when the record is insufficiently clear to permit a
> determination on the basis of the decision and cautioning against the
> adoption of a party's position or proffers in making findings of fact);
> *Fryer v. MacDougall*, 462 F.2d 1093, 1093 (5th Cir. 1972) (construing
> pro se habeas petition liberally and remanding to the district court with
> instructions to allow leave to amend the petition in the interests of
> justice).
>
> Footnote 3:
> This will permit the Warden to file an amended responsive pleading,
> and the district court will then be in a position to examine, as it deems
> necessary, matters including: (1) the exhaustion of state remedies and
> whether any state remedies remain available; (2) procedural default;
> (3) the need for an evidentiary hearing or further development of the
> record; (4) the proper standard of review, and (5) the merits of
> Cardenas' clam. We would then be in a position to review any issues
> with the record thus clarified.

(ECF No. 46, at p. 6). In describing the issues that may be addressed in an amended responsive

pleading, the Ninth Circuit's remand order does not contemplate a procedural attack of the amended

petition on the grounds of second or successive petition under 28 U.S.C. § 2244(b), as respondents

argue in their motion. Because respondents' argument that the amended petition is second or

18

1  successive is contrary to the Ninth Circuit's order of reversal and remand, this Court rejects such

2  arguments.

3      **D. Exhaustion of the Amended Petition**

4          **1. Exhaustion Standard**

5          A federal court will not grant a state prisoner's petition for habeas relief until the prisoner has

6  exhausted his available state remedies for all claims raised. *Rose v. Lundy*, 455 U.S. 509 (1982); 28

7  U.S.C. § 2254(b). A petitioner must give the state courts a fair opportunity to act on each of his

8  claims before he presents those claims in a federal habeas petition. *O'Sullivan v. Boerckel,* 526 U.S.

9  838, 844 (1999); *see also Duncan v. Henry,* 513 U.S. 364, 365 (1995). A claim remains

10 unexhausted until the petitioner has given the highest available state court the opportunity to

11 consider the claim through direct appeal or state collateral review proceedings. *See Casey v. Moore,*

12 386 F.3d 896, 916 (9th Cir. 2004); *Garrison v. McCarthey,* 653 F.2d 374, 376 (9th Cir. 1981).

13         A habeas petitioner must "present the state courts with the same claim he urges upon the

14 federal court." *Picard v. Connor*, 404 U.S. 270, 276 (1971). The federal constitutional implications

15 of a claim, not just issues of state law, must have been raised in the state court to achieve exhaustion.

16 *Ybarra v. Sumner*, 678 F. Supp. 1480, 1481 (D. Nev. 1988) (citing *Picard*, 404 U.S. at 276)). To

17 achieve exhaustion, the state court must be "alerted to the fact that the prisoner [is] asserting claims

18 under the United States Constitution" and given the opportunity to correct alleged violations of the

19 prisoner's federal rights. *Duncan v. Henry,* 513 U.S. 364, 365 (1995); *see Hiivala v. Wood,* 195 F.3d

20 1098, 1106 (9th Cir. 1999). It is well settled that 28 U.S.C. § 2254(b) "provides a simple and clear

21 instruction to potential litigants: before you bring any claims to federal court, be sure that you first

22 have taken each one to state court." *Jiminez v. Rice,* 276 F.3d 478, 481 (9th Cir. 2001) (quoting *Rose*

23 *v. Lundy,* 455 U.S. 509, 520 (1982)).

24         A claim is not exhausted unless the petitioner has presented to the state court the same

25 operative facts and legal theory upon which his federal habeas claim is based. *Bland v. California*

26

19

*Dept. of Corrections,* 20 F.3d 1469, 1473 (9th Cir. 1994).  In the Ninth Circuit, fair presentation is accomplished if the prisoner is "making a claim under the United States Constitution . . . and describes both the operative facts and the federal legal theory on which his claim is based." *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005), quoting *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (internal citations omitted).  The presentation requirement is satisfied even when the state's highest court refuses or neglects the opportunity to resolve the federal issue.  *Dye v. Hofbauer*, 546 U.S. 1, 2 (2005) ("Failure of a state appellate court to mention a federal claim does not mean the claim was not presented to it.") (per curium).  Conversely, a federal claim is exhausted if the state appellate court rules upon it, even though it was not fairly presented.  *Casey v. Moore*, 386 F.3d 896, 916, n.18 (9th Cir. 2004) ("Of course, a claim is exhausted if the state's highest court expressly addresses the claim, whether or not it was fairly presented.") (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

        In general, the exhaustion requirement is not met when the petitioner presents to the federal court facts or evidence which place the claim in a significantly different posture than it was in the state courts, or where different facts are presented at the federal level to support the same theory.  *See Nevius v. Sumner,* 852 F.2d 463, 470 (9th Cir. 1988); *Pappageorge v. Sumner,* 688 F.2d 1294, 1295 (9th Cir. 1982).  However, a federal habeas petition may present new, additional, or supplemental facts that were not considered in the state court, so long as the evidence does not "fundamentally alter the legal claim already considered by the state courts."  *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986); *see also Lopez v. Schiro*, 491 F.3d 1029, 1040 (9th Cir. 2007); *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999).

//////////

//////////

## 2.  Analysis of Amended Petition

### a.  Ground 1

20

Ground 1 of the amended petition alleges that counsel failed to investigate the circumstances of petitioner's case and provided grossly inaccurate advice about the likely outcome of the plea. (ECF No. 57, at pp. 11-14).  In the direct appeal, petitioner presented a the single issue to the Nevada Supreme Court: "Whether the district court abused its discretion when it denied Cardenas's motion to withdraw his guilty plea?"  (Exhibit 97).  In petitioner's *pro se* state habeas petition, he alleged that he was denied effective assistance of counsel on direct appeal because, he alleged mistakenly, that the district court failed to assign appellate counsel to him.  (Exhibit 72 & 73).  Respondents argue that petitioner never presented the following issues to the Nevada Supreme Court, which are contained in Ground 1 of the federal amended petition: (1) the claim that plea counsel failed to investigate and discover that petitioner had other friends at his apartment when the victim came to his apartment the night of the incident, June 4, 2002, including petitioner's failure to present the Nevada Supreme Court with the declarations of two individuals who say they were with petitioner the night of the underlying offenses (Exhibits 125 and 126); (2) the claim that plea counsel Jordan Savage was ineffective based on the legal theory that he failed to investigate and that plea counsel acted in an unprofessional manner by advising petitioner that the judge would give him probation instead of the 10 years to life sentence that the State would be seeking under the plea agreement; (3) the claim that plea counsel's performance was deficient because after petitioner received an unfavorable probation evaluation, plea counsel continued to promise Cardenas that he would set up another evaluation that would be favorable, but he failed to do so.  (ECF No. 57).  As to each of these claims, this Court finds that petitioner failed to present these claims to the Nevada Supreme Court in either his direct appeal or in his state habeas petition.  (Exhibits 72, 73, 97).  Petitioner's inclusion of additional legal theories, additional facts, exhibits that were not presented in state court fundamentally alters the claims presented to the Nevada Supreme Court.  As such, Ground 1 of the amended petition is unexhausted.

**b.  Ground 2**

21

1    In Ground 2 of the amended petition, petitioner alleges that his guilty plea was not knowing,

2  voluntary, or intelligent.  (ECF No. 57, at p. 15).  In its order of affirmance on direct appeal, the

3  Nevada Supreme Court ruled that petitioner "understood the consequences of his plea," that "he

4  understood the waiver of his rights,"and that "he signed the plea agreement voluntarily."  (Exhibit

5  102).  To the extent that the Nevada Supreme Court has ruled on the issue of whether petitioner's

6  guilty plea was knowing, voluntary, and intelligent, this portion of Ground 2 is exhausted.  *See Casey*

7  *v. Moore*, 386 F.3d 896, 916, n.18 (9th Cir. 2004) ("Of course, a claim is exhausted if the state's

8  highest court expressly addresses the claim, whether or not it was fairly presented.") (citing *Castille*

9  *v. Peoples*, 489 U.S. 346, 351 (1989)); *see also Chambers v. McDaniel*, 549 F.3d 1191, 1197 (9th

10  Cir. 2008) (petitioner exhausted claim even though state supreme court denied the petition by stating

11  simply that the petition and documents filed were considered).

12    Also in Ground 2, petitioner asserts that his guilty plea was rendered invalid because: (1) he

13  was not allowed to review discovery; (2) plea counsel failed to investigate; (3) plea counsel told

14  petitioner that he could not prevail at trial, yet promised petitioner that he would receive probation if

15  he pled guilty.  (ECF No. 57, at p. 15).  Respondents contend that petitioner never presented the

16  Nevada Supreme Court these facts.  This Court finds that petitioner failed to present these additional

17  claims to the Nevada Supreme Court in either his direct appeal or in his state habeas petition.

18  (Exhibits 72, 73, 97).  As such, the portion of Ground 2 alleging that his guilty plea is invalid

19  because: (1) he was not allowed to review discovery; (2) plea counsel failed to investigate; (3) plea

20  counsel told petitioner that he could not prevail at trial, yet promised petitioner that he would receive

21  probation if he pled guilty, is unexhausted.

22  / / / / / / / / / / /

23    **c.  Ground 3**

24    Ground 3 of the amended petition alleges that petitioner received ineffective assistance of

25  appellate counsel Gregory Denue on direct appeal.  (ECF No. 57, at pp. 16-19).  Petitioner

26

incorporates into Ground 3 all prior allegations made in Grounds 1 and 2. (*Id.,* at p. 16).  In Ground 3, petitioner specifically challenges appellate counsel's actual performance on direct appeal. (*Id.,* at pp. 17-19).  Ground 3 of the amended petition also includes facts concerning other cases and news articles (Exhibits 116-122), purporting to document appellate counsel Denue's "long history of unprofessional behavior." (*Id.*, at p. 16).  Petitioner never presented the Nevada Supreme Court with a claim that appellate counsel Denue's actual performance on direct appeal constituted the ineffective assistance of counsel.  (Exhibits 72, 73).  While petitioner did raise a claim of ineffective assistance of counsel in his state habeas petition, the basis of that claim was that the state district failed to appoint counsel for petitioner on direct appeal.  (Exhibits 72, 73).  Additionally, the amended petition sets forth extensive factual development of the procedural history of petitioner's direct appeal and refers to exhibits (Exhibits 116 through 122) concerning Denue's alleged history of unprofessional behavior, as well as information concerning and other private attorneys, all of which were never presented to the Nevada Supreme Court.  The Court finds that petitioner failed to present the claims in Ground 3 of the amended petition to the Nevada Supreme Court in his state habeas petition or otherwise.  Petitioner's inclusion of additional legal theories, facts, and exhibits that were not presented in state court fundamentally alters the claims presented to the Nevada Supreme Court.  Ground 3 of the amended petition is unexhausted.

### 3. Absence of State Corrective Process Arguments

Under the AEDPA, a court may excuse a petitioner from satisfying the exhaustion requirement if there is "an absence of available State corrective process" or that "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(B).  In the amended petition and in the opposition, petitioner asserts that there is an absence of available corrective  process in the Nevada state courts.  (ECF No. 57, at p. 11; ECF No. 69, at pp. 21-22).  Petitioner asserts that his claims would not necessarily be procedurally defaulted in state court.  "Rather, Cardenas believes that the state courts would likely deny him relief on any

subsequent petition because the Nevada Supreme Court has already claimed to have reviewed the record in this case and found no fault with Cardenas' plea." (ECF No. 69, at pp. 21-22).  Petitioner further argues that the Nevada Supreme Court would likely bar any further litigation regarding the plea based on the invocation of "law of the case." (*Id.*, at p. 22).  Petitioner cites cases stating that a state court's rule against re-litigation is not a bar to federal review.  *See Pirtle v. Morgan*, 313 F.3d 1160, 1168 (9th Cir. 2002); *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Cone v. Bell*, 129 S.Ct. 1769, 1781 (2009).  In this case, however, as discussed above, there are factual and legal issues in the amended petition that petitioner has not presented to the Nevada Supreme Court.  Therefore, the issue in returning to the Nevada state courts is not necessarily one of re-litigation.  This Court finds that exhaustion cannot be excused in this case on the basis that there is an absence of an available state court corrective process or because  "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. 2254(b)(1)(B).

### 4. Petitioner is Entitled to a Stay and Abeyance

In the opposition, petitioner argues that if this Court finds any claims in the amended petition to be unexhausted, the Court should grant a stay so that he may return to state court to exhaust his unexhausted claims.  The Court has determined that the amended petition is a "mixed petition" because it contains both exhausted and unexhausted claims.  The Court has reviewed petitioner's arguments for issuance of a stay, as set forth in the opposition.  (ECF No. 69, at pp. 25-28).  The Court has also reviewed respondents' arguments against the issuance of a stay, as set forth in the reply brief.  (ECF No. 75, at pp. 18-19).

To allow a stay and abeyance for a petitioner to return to state court for the purpose of exhausting state court remedies, the Court must find that: (1) the petitioner has good cause for the failure to exhaust; (2) the unexhausted claims are not plainly meritless; and (3) there is no indication that the petitioner engaged in intentional dilatory tactics.  *See Rhines v. Weber*, 544 U.S. 269 (2005); *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2002); *King v. Ryan*, 564 F.3d 1133 (9th Cir. 2009).  In the

1  instant case, this Court finds that petitioner has demonstrated good cause for the failure to exhaust all

2  grounds of his federal habeas petition.  Further, the grounds of the amended petition are not "plainly

3  meritless."  Finally, there is no indication that petitioner engaged in dilatory litigation tactics,

4  particularly given the "complicated procedural history" of this case, as stated in the Ninth Circuit's

5  order of July 12, 2011.  (ECF No. 46, at p. 2).  This Court concludes that petitioner has satisfied the

6  criteria for a stay and abeyance.  Additionally, as a condition of the stay, petitioner shall exhaust all

7  of his unexhausted claims in state court during the stay of this action.  *See Slack v. McDaniel*, 529

8  U.S. 473, 489 (2000).  The Court will not allow petitioner to return again to state court for

9  exhaustion purposes.  When petitioner returns to this Court to lift the stay, he shall present only

10  exhausted claims.

11  **E.  Anticipatory Procedural Default Argument**

12  Respondents argue that if petitioner returns to state court to exhaust the claims in the

13  amended petition, such claims would "likely" be procedurally defaulted under Nev. Rev. Stat. 34.726

14  (timeliness) and Nev. Rev. Stat. 34.800 (latches).  This Court declines to assume, as respondents do,

15  that any grounds in the amended petition would be procedurally defaulted by the Nevada state courts

16  on petitioner's return to exhaust his claims.  NRS 34.726 provides that a petitioner may not bring a

17  petition that challenges the validity of a judgment or sentence more than one year after entry of the

18  judgment of conviction, or more than one year after the Supreme Court has issued its remittitur

19  regarding a direct appeal, "unless there is good cause shown for the delay."  The statute goes on to

20  clarify that "good cause" exists if the petitioner can demonstrate to the court "(a) that the delay is not

21  the fault of petitioner; and (b) that dismissal of the petition as untimely will unduly prejudice the

22  petitioner."  Petitioner can overcome the time limit in NRS 34.726 by demonstrating good cause.

23  This Court will not assume, as respondents urge, that petitioner could not persuade the Nevada

24  Supreme Court to reach the merits of his unexhausted claims.  The Court rejects respondents'

25

26

1   argument that the amended petition should be dismissed because it may be procedurally defaulted in

2   state courts.

3   **F. Motion to Strike Exhibits (ECF No. 64)**

4        Respondents move to strike Exhibits 115 through 122, 125, and 126 from the record. (ECF

5   No. 64). These exhibits are included in petitioner's supplemental index of exhibits filed with the

6   amended petition. (ECF No. 58). Respondents assert that several exhibits should be stricken from

7   the record at this juncture. Respondents' motion to strike exhibits is premature, and this Court

8   denies the motion on that basis, without prejudice to renewing the motion at a later time.

9        As to Exhibits 125 and 126, the declarations of Laura Veronica Ornelas and Jesus Andrea

10  Hueshen, respectively, the Court agrees with respondents that these declarations are unsworn, do not

11  indicate they are truthful, and were not signed under penalty of perjury. If petitioner wishes this

12  Court to eventually consider these declarations, this defect must be cured prior by submitting

13  corrected declarations for Ornelas and Hueshen, sworn and signed under penalty of perjury.

14  **IV. Conclusion**

15       **IT IS THEREFORE ORDERED** that respondents' motion to dismiss (ECF No. 62) is

16  **GRANTED IN PART AND DENIED IN PART**, as follows:

17       1.  The amended petition is not barred by the doctrine of law the case.

18       2.  The amended petition is not time-barred under the AEDPA.

19       3.  The amended petition is not a second or successive petition subject to dismissal.

20       4.  The amended petition has not been procedurally defaulted in state court.

21       5.  Grounds 1 and 3 of the amended petition are unexhausted.

22       6.  Ground 2 of the amended petition is exhausted to the extent petitioner alleges that his

23  guilty plea was not knowing, voluntary, or intelligent.

24       7.  The portion of Ground 2 alleging that his guilty plea is invalid because: (1) he was not

25  allowed to review discovery; (2) plea counsel failed to investigate; (3) plea counsel told petitioner

26

1   that he could not prevail at trial, yet promised petitioner that he would receive probation if he pled

2   guilty, is unexhausted.

3        **IT IS FURTHER ORDERED** that respondents' motion to strike exhibits from the record

4   (ECF No. 64) is **DENIED WITHOUT PREJUDICE.**

5        **IT IS FURTHER ORDERED** that if petitioner wishes the Court to ultimately consider

6   Exhibits 125 and 126, petitioner **SHALL FILE** corrected declarations for Ornelas and Hueshen,

7   sworn and signed under penalty of perjury.

8        **IT IS FURTHER ORDERED** that petitioner's request for a stay and abeyance is

9   **GRANTED.**

10       **IT IS FURTHER ORDERED** that this action is **STAYED** pending exhaustion of the

11  unexhausted claims.  Petitioner may move to reopen the matter following exhaustion of the claims.

12       **IT IS FURTHER ORDERED** that the grant of a stay is conditioned upon petitioner filing a

13  state post-conviction petition or other appropriate proceeding in state court within **forty-five (45)**

14  **days** from the entry of this order, and returning to federal court with a motion to reopen within **forty-**

15  **five (45) days** of issuance of the remittitur by the Supreme Court of Nevada at the conclusion of the

16  state court proceedings.

17       **IT IS FURTHER ORDERED** that as a condition of the stay, petitioner shall exhaust all of

18  his unexhausted claims in state court during the stay of this action.

19       **IT IS FURTHER ORDERED** that the Clerk shall **ADMINISTRATIVELY CLOSE** this

20  action, until such time as the Court grants a motion to reopen the matter.

21          Dated this 18th day of March, 2013.

22

23       _____
         UNITED STATES DISTRICT JUDGE

24

25

26

27